UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

HEATHER MARIE EWING; MARK LEE
EWING; KATELYN JOYNER EWING-
MUNNERLYN, a minor by and
through her father MARK LEE
EWING; RACHEL MARIE EWING, a
minor by and through her parents
HEATHER MARIE EWING and MARK LEE
EWING; and SAVANNAH JAILYN
EWING, a minor by and through
her parents HEATHER MARIE EWING
and MARK LEE EWING,

       Plaintiffs,

   v.

CITY OF STOCKTON; DISTRICT
ATTORNEY JOHN D. PHILLIPS;
DEPUTY DISTRICT ATTORNEY LESTER
F. FLEMING; OFFICER WILLIAM
JEROME HUTTO, individually and
in his capacity as a City of
Stockton Police Officer; OFFICER
STEVEN McCARTHY, individually
and in his capacity as a City of
Stockton Police Officer; OFFICER
JOHN J. REYES, individually and
in his capacity as a City of
Stockton Police Officer,

       Defendants.
_____/

NO. CIV. 2:05-2270 WBS GGH

MEMORANDUM AND ORDER RE:
MOTION FOR SUMMARY JUDGMENT

1

----oo0oo----

The Ninth Circuit reversed this court's grant of summary judgment in favor of defendant Stockton Deputy District Attorney Lester F. Fleming on the ground of absolute immunity and remanded the case to this court "for an initial determination by the district court of whether Fleming is entitled to qualified immunity." Ewing v. City of Stockton, 588 F.3d 1218 (9th Cir. 2009). Currently before the court is Fleming's motion for summary judgment on the ground of qualified immunity.[1]

I.  Factual Background

The facts leading up to this civil rights case have been discussed at length by this court in its prior order granting partial summary judgment in favor of defendants, Ewing v. City of Stockton, No. Civ. 2:05-2270, 2008 WL 366156 (E.D. Cal. Feb. 8, 2009), and by the Ninth Circuit on appeal. Ewing, 588 F.3d 1218. To avoid repetition, the court will limit the discussion herein to the facts that are relevant to determine whether Fleming is entitled to qualified immunity.

On November 5, 2004, Mark Donahue was murdered at Shakers' Bar in Stockton, California, and Heather and Mark became the initial suspects, although the murder charges against them were ultimately dismissed. Id. at 1221-22. Based on evidence of their alleged involvement with the murder, police obtained a warrant to search their home and, when the search revealed marijuana plants and a handgun, the Ewings were arrested on gun

---

[1]     Fleming argues that this court should ignore the Ninth Circuit's instructions and determine whether plaintiffs' Second Amended Complaint contains sufficient allegations against him. The court declines to do so.

and drug-related charges.  Id.  To decide whether to add murder

charges ("add-book") against the Ewings, Stockton Police Officer

John Reyes contacted Fleming for advice.  Id. at 1222.  Fleming

informed Officer Reyes that he intended to file a criminal

complaint charging the Ewings with murder and recommended that

Officer Reyes add-book murder charges against them.  Id.; Ewing,

2008 WL 366156, at *4.  Officer Reyes followed Fleming's advice

and add-booked murder charges against the Ewings, which precluded

them from being eligible for bail.  Ewing, 588 F.3d at 1222.

At the time Fleming recommended that Officer Reyes add-

book murder charges against the Ewings, the police had obtained

the following evidence.  On the day of Donahue's murder, an

altercation had occurred at Shaker's Bar between a group of men

and two other men who were wearing vests identifying themselves

as members of the Jus' Brothers Motorcycle Club ("Jus'

Brothers").  Id. at 1221.  During the altercation, a woman either

accidentally bumped into or intentionally pushed Donahue, who was

not a part of the altercation, and Donahue started yelling at the

woman.  Id.  In response, the woman called for one of the men in

the Jus' Brothers vests and that man initiated a fight with

Donahue by hitting him over the head with what appeared to be a

large, three-cell Maglite flashlight.  Id.; Ewing, 2008 WL

366156, at *1.  The altercation ended when the man wearing the

Jus' Brothers vest pulled out a knife and stabbed Donahue.

Ewing, 2008 WL 366156, at *1.  The suspect then mounted a Harley

Davidson motorcycle, joined on the back by the female companion

who had summoned him, and departed.  Id.

The day after the incident, Brian Shirk, who witnessed

3

the events at Shakers' Bar and was standing next to Donahue when he was attacked, contacted Officer Reyes and told him that he had found a picture with the female companion on the Jus' Brothers' website.  <u>Ewing</u>, 588 F.3d at 1221.  The woman he identified in the picture was later determined to be Heather.  <u>Id.</u>

Police subsequently obtained a warrant to search the Ewing residence and conducted the search.  <u>Id.</u> at 1221-22. During the search of the Ewing residence, officers found a Harley Davidson motorcycle, a blue Maglite flashlight that was inside one of the motorcycle compartments, knives, and clothing with Jus' Brothers insignia.  <u>Id.</u> at 1222.  According to Officer Reyes, the Maglite "appeared to have some hair and maybe some blood on it," but an analysis of the trace evidence had not been conducted yet.  (Reyes Dep. 197:1-198:2.)  Although Officer Reyes testified that he told Fleming about this potential trace evidence, Fleming testified that he does not recall Officer Reyes telling him about the possible hair or blood on the Maglite and that he thinks he "would have remembered it" if Officer Reyes had relayed that information to him.  (<u>Id.</u> at 202:16-203:1; Fleming Dep. 33:8-15.)

After the search, Officer Reyes compiled two six-pack photo lineups, one containing Heather and the other containing Mark.  <u>Ewing</u>, 588 F.3d at 1222; <u>Ewing</u>, 2008 WL 366156, at *3. Each six-pack photo lineup was shown to five of the key witnesses, and three of the witnesses identified Heather as the female companion at the bar.  <u>Ewing</u>, 588 F.3d at 1222; <u>Ewing</u>, 2008 WL 366156, at *3.  Only one of the five witnesses provided a tentative (fifty to sixty percent) identification of Mark.

4

1  <u>Ewing</u>, 588 F.3d at 1222; <u>Ewing</u>, 2008 WL 366156, at *3.  Shirk

2  also indicated that, while he did not recall the name the female

3  companion called out, it "may, might have had like, uh, uh K type

4  of sound at the end of it, like a Mike or Jack."  <u>Ewing</u>, 588 F.3d

5  at 1222.

6  II.  <u>Discussion</u>

7       Summary judgment is proper "if the pleadings, the

8  discovery and disclosure materials on file, and any affidavits

9  show that there is no genuine issue as to any material fact and

10 that the movant is entitled to judgment as a matter of law."

11 Fed. R. Civ. P. 56(c); <u>see also</u> <u>id.</u> R. 56(a) ("A party claiming

12 relief may move, with or without supporting affidavits, for

13 summary judgment on all or part of the claim.").  A material fact

14 is one that could affect the outcome of the suit, and a genuine

15 issue is one that could permit a reasonable jury to enter a

16 verdict in the non-moving party's favor.  <u>Scott v. Harris</u>, 550

17 U.S. 372, 380 (2007); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

18 242, 248 (1986).  The party moving for summary judgment bears the

19 initial burden of establishing the absence of a genuine issue of

20 material fact and can satisfy this burden by presenting evidence

21 that negates an essential element of the non-moving party's case.

22 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

23 Alternatively, the moving party can demonstrate that the

24 non-moving party cannot produce evidence to support an essential

25 element upon which it will bear the burden of proof at trial.

26 <u>Id.</u>

27       Once the moving party meets its initial burden, the

28 non-moving party "may not rely merely on allegations or denials

5

in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).  In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party, but may not engage in credibility determinations or weigh the evidence. Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In relevant part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

While § 1983 is not itself a source of substantive rights, it provides a cause of action against any person who, under color of state law, deprives an individual of federal constitutional rights or limited federal statutory rights.  42 U.S.C. § 1983; Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Here, plaintiffs allege that Fleming violated their Fourth Amendment rights to be free from arrest without probable cause.

In suits under § 1983, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'"  Pearson v. Callahan, --- U.S. ----, ----, 129 S. Ct.

808, 815 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818
(1982)).  "The test for qualified immunity is: (1) identification
of the specific right being violated; (2) determination of
whether the right was so clearly established as to alert a
reasonable officer to its constitutional parameters; and (3) a
determination of whether a reasonable officer would have believed
that the policy or decision in question was lawful."  <u>McDade v.</u>
<u>West</u>, 223 F.3d 1135, 1142 (9th Cir. 2000).

　　　　　Under the first inquiry, a court determines whether,
"[t]aken in the light most favorable to the party asserting the
injury, [] the facts alleged show the officer's conduct violated
a constitutional right."  <u>Saucier v. Katz</u>, 533 U.S. 194, 201
(2001).  The Supreme Court recently held that a court may assume
the existence of a constitutional violation under this first
inquiry for purposes of the qualified immunity analysis.
<u>Pearson</u>, 129 S. Ct. 808, 818.

　　　　　Assuming a constitutional violation occurred, the
second question the court must ask is whether the official's
conduct violated a clearly established right.  The clearly
established inquiry "serves the aim of refining the legal
standard and is solely a question of law for the judge."  <u>Tortu</u>
<u>v. Las Vegas Metro. Police Dep't</u>, 556 F.3d 1075, 1085 (9th Cir.
2009).  As the Supreme Court has recognized, whether the
unlawfulness of certain conduct is clearly established "depends
largely 'upon the level of generality at which the relevant
"legal rule" is to be identified.'"  <u>Wilson v. Layne</u>, 526 U.S.
603, 614 (1999) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 639
(1987)).  The right must be defined in a "particularized, and

hence more relevant, sense," requiring a court to strike a balance between defining a right too generally so that the definition necessarily leads to the conclusion that the right is clearly established and defining the right too narrowly so that prior precedent must mirror the facts of the case in order to conclude that the right has been clearly established. Saucier, 533 U.S. at 202-03.  If the court concludes a right is not clearly established, the official is entitled to qualified immunity. Id. at 202.

If a right is clearly established, an official is not entitled to qualified immunity unless a reasonable official would not have known that his conduct violated the clearly established right. See Anderson, 483 U.S. at 640.  The reasonableness inquiry recognizes "'that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude" that their conduct comports with the Constitution and thus shields officials from liability when their mistake is reasonable. Rodis v. City & County of San Francisco, 558 F.3d 964, 970-71 (9th Cir. 2009) (quoting Anderson, 483 U.S. at 641)).

While different conclusions can be reached on the clearly established and reasonableness inquires, the two inquiries are usually intertwined, and the Supreme Court has explained that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202; see also Anderson, 483 U.S. at 640 ("The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."). Given
the overlap of the two inquiries, many courts treat the analysis
as a single inquiry. See, e.g., Pearson, 129 S. Ct. at 816 ("If
the court finds the constitutional right was clearly established
such that a reasonable officer would be aware that his or her
conduct was unconstitutional, then the officer is not entitled to
qualified immunity."); see also, e.g., Gasho v. United States, 39
F.3d 1420, 1439 (9th Cir. 1994) ("Our inquiry now turns to
whether a reasonable officer could have believed that the arrest
of the [plaintiff] was lawful, in light of the clearly
established law and the information the arresting officers
possessed.").

          In this case, plaintiffs allege that Fleming violated
their Fourth Amendment rights by causing them to be arrested
without a warrant or probable cause. See United States v. Lopez,
482 F.3d 1067, 1072 (9th Cir. 2007) ("Under the Fourth Amendment,
a warrantless arrest requires probable cause.") (citing Michigan
v. Summers, 452 U.S. 692, 700 (1981)). "Probable cause to arrest
exists when officers have knowledge or reasonably trustworthy
information sufficient to lead a person of reasonable caution to
believe that an offense has been or is being committed by the
person being arrested." Lopez, 482 F.3d at 1072 (citing Beck v.
Ohio, 379 U.S. 89, 91 (1964)). "While conclusive evidence of
guilt is of course not necessary under this standard to establish
probable cause, '[m]ere suspicion, common rumor, or even strong
reason to suspect are not enough.'" Id. (quoting McKenzie v.
Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984)).

          "Because probable cause must be evaluated from the

9

perspective of 'prudent men, not legal technicians,'" <u>Gasho</u>, 39
F.3d at 1428 (quoting <u>Brinegar v. United States</u>, 338 U.S. 160,
176 (1949)), "an officer need not have probable cause for every
element of [an] offense." <u>Id.</u> (citing <u>United States v. Thornton</u>,
710 F.2d 513, 515 (9th Cir. 1983). However, "'when specific
intent is a required element of the offense, the arresting
officer must have probable cause for that element in order to
reasonably believe that a crime has occurred.'" <u>Rodis</u>, 558 F.3d
at 969 (quoting <u>Gasho</u>, 39 F.3d at 1428).

Here, Fleming advised Reyes to add-book murder charges
against the Ewings.[2]  Under California law, murder is the
"unlawful killing of a human being, or a fetus, with malice
aforethought."  Cal. Penal Code § 187.  The malice element for
murder is "implied 'when a killing results from an intentional
act, the natural consequences of which are dangerous to human
life, and the act is deliberately performed with knowledge of the

---

[2]   At the time murder charges were add-booked against
them, the Ewings were already under arrest for gun and drug-
related charges based on the items found in the search of their
home.  Generally, "'probable cause to believe that a person has
committed any crime will preclude a false arrest claim, even if
the person was arrested on additional or different charges for
which there was no probable cause.'"  <u>Ewing</u>, 588 F.3d at 1230
n.19 (quoting <u>Holmes v. Village of Hoffman Estate</u>, 511 F.3d 673,
682 (7th Cir. 2007)).  Nonetheless, the Ninth Circuit rejected
Fleming's argument that the add-booking of murder charges was
insignificant because the Ewings were already under arrest.  <u>Id.</u>
at 1234; <u>see also</u> <u>id.</u> at 1230 n.19 (noting that the parties
agreed that "the arrest for murder was significant because it
caused Mark and Heather's continued detention").
     Fleming also argues that his recommendation to add-book
murder charges did not involve a recommendation about probable
cause.  This argument ignores the Ninth Circuit's implicit
conclusion that Fleming's recommendation to add-book murder
charges against the Ewings constituted a recommendation that
probable cause supported their arrest for murder.  <u>See</u> <u>id.</u> at
1230-31, 1234.

danger to, and with conscious disregard for, human life." <u>Torres</u>
<u>v. City of Los Angeles</u>, 548 F.3d 1197, 1207 (9th Cir. 2008)
(quoting <u>People v. Cook</u>, 39 Cal. 4th 566, 596 (2006)).
"California also recognizes 'a provocative act murder theory,'
which 'can be applied in "situations in which criminal defendants
neither kill nor intend to kill, but cause a third party to kill
in response to their life-threatening provocative acts."'"
<u>Ewing</u>, 588 F.3d at 1230 (quoting <u>Torres</u>, 548 F.3d at 1207 n.8
(quoting <u>People v. Cervantes</u>, 26 Cal. 4th 860, 867 (2001))).

　　　　　To be an aider and abettor under California law, a
person must act "with both knowledge of the perpetrator's
criminal purpose and the intent of encouraging or facilitating
commission of the offense." <u>People v. Avila</u>, 38 Cal. 4th 491,
564 (2006); <u>accord</u> <u>People v. Mendoza</u>, 18 Cal. 4th 1114, 1123
(1998). The California Supreme Court has held that "[t]he intent
requirement for an aider and abettor fits within the []
definition of specific intent." <u>Mendoza</u>, 18 Cal. 4th at 1129.
<u>But see</u> <u>id.</u> at 1140 (Brown, J., dissenting) ("Aiding and abetting
murder and attempted murder is not a 'specific intent crime.'
Indeed, aiding and abetting is not a crime at all; it is a theory
of liability."). An aider and abettor need not, however, have
the specific intent to kill. <u>See</u> <u>Cox v. Ayers</u>, No. 07-99010,
2010 WL 2930981, at *1 (9th Cir. July 22, 2010) (a defendant "can
be convicted of first-degree murder under an aiding and abetting
theory even if the defendant lacked the specific intent to kill")
(citing <u>People v. Williams</u>, 16 Cal. 4th 635, 691 (1997)).

A.　<u>Heather Ewing</u>

　　　　　When addressing whether the officer defendants were

11

entitled to qualified immunity in the recent appeal, the Ninth
Circuit criticized this court's prior finding that probable cause
supported Heather's arrest for murder and commented that "the
evidence supporting [the district court's] conclusion was slim."
Ewing, 588 F.3d at 1231.  The Ninth Circuit nonetheless declined
to resolve whether probable cause supported her arrest for murder
and ultimately held that the officers were entitled to qualified
immunity.  Id.  In deference to the Ninth Circuit's view
regarding the strength of the evidence of a constitutional
violation, this court will similarly assume the existence of a
constitutional violation--i.e., that Fleming violated Heather's
Fourth Amendment right to be free from arrest without probable
cause--and determine whether he is entitled to qualified immunity
because the law was not clearly established or a reasonable
prosecutor would have made the same recommendation.  Saucier, 533
U.S. at 201.

While "[t]he Fourth Amendment right to be free from
arrests without probable cause is clearly established," Gasho, 39
F.3d at 1438, defining the right that broadly would preclude
qualified immunity for any arrest without probable cause
regardless of the particular circumstances of the case.  The
relevant inquiry is thus whether it was clearly established that,
at the time he recommended that the officers add-book a murder
charge against Heather, a reasonable prosecutor would have known
that the evidence against her was insufficient to support a
finding of probable cause that she aided and abetted in the
murder of Donahue.  Saucier, 533 U.S. at 202.

The Ninth Circuit concluded, without discussion, that

12

the officers were entitled to qualified immunity because "[t]he Ewings do not establish that the unlawfulness of charging Heather with murder on the facts in question was clearly established."[3] Ewing, 588 F.3d at 1231.  If Fleming knew the same facts as the officers when he recommended that murder charges be add-booked against Heather, the law of the case doctrine would compel the conclusion that the unlawfulness of Fleming's recommendation to add-book murder charges against her was not clearly established. See Agostini v. Felton, 521 U.S. 203, 236 (1997) ("Under [the law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation.").

Similarly to the officers, Fleming was informed that Heather was identified as being present at Shakers Bar the night of the murder, having departed with the male biker suspect, and residing at the home where the motorcycle, Maglite, and Jus' Brothers clothing were found.  Unlike the officers, however, Fleming was not privy to the minimal evidence about Heather's potential involvement in the murder.  Specifically, the officers were informed that Heather might have instigated the confrontation with Donahue that led to his death by intentionally pushing him and then beckoning the male biker who ultimately

---

[3]     While the officers' reliance on Fleming's recommendation was significant to the Ninth Circuit's conclusion that they were entitled to qualified immunity and distinguishes the qualified immunity inquiry as to the officers, the officers' reliance on Fleming's recommendation does not appear to have influenced the Ninth Circuit's conclusion that the unlawfulness of the arrest was not clearly established.  See Ewing, 588 F.3d at 1231 ("The Ewings do not establish that the unlawfulness of charging Heather with murder on the facts in question was clearly established.  Further, the officers were entitled to rely on the legal advice they obtained from Fleming.") (emphasis added).

killed him.  While Officer Reyes was aware of this limited

evidence at the time he contacted Fleming,[4] he never communicated

this evidence to Fleming and repeatedly confirmed that the only

information he conveyed to Fleming about Heather's involvement

was that she was present when the incident occurred and left with

the biker who stabbed Donahue.  (Reyes Dep. 155:25-156:23,

157:10-17.)  Fleming has also failed to submit any evidence

showing he had knowledge about the limited circumstantial

evidence suggesting Heather could have been involved with or

instigated the murder.  (Fleming Dep. 49:16-5.)

        Because Fleming was unaware of the limited evidence

linking Heather to the murder, the Ninth Circuit's conclusion

that the officers did not violate clearly established law and

were thus entitled to qualified immunity is not dispositive with

respect to Fleming's entitlement to qualified immunity.  The

court must therefore determine whether Fleming's recommendation

to add-book murder charges against Heather based on her presence

at the incident and association and departure with the male biker

suspect conflicted with clearly established law of which a

---

        [4]    Fleming has not argued that the "collective knowledge
doctrine" allows this court to consider evidence the officers
knew even if he lacked knowledge of that evidence at the time he
made his recommendation.  See United States v. Ramirez, 473 F.3d
1026, 1032 (9th Cir. 2007) ("Under the collective knowledge
doctrine, [the court] must determine whether an . . . arrest
complied with the Fourth Amendment by 'look[ing] to the
collective knowledge of all the officers involved in the criminal
investigation although all of the information known to the law
enforcement officers involved in the investigation is not
communicated to the officer who actually [undertakes the
challenged action].'" (quoting United States v. Sutton, 794 F.2d
1415, 1426 (9th Cir. 1986))) (second and third alterations in
Ramirez).

1  reasonable prosecutor would know.[5]

2       When discussing whether probable cause supports an
3  arrest for aiding and abetting, California appellate courts have
4  held that presence and association are relevant: "Evidentiary
5  considerations which are probative of whether one is an aider and
6  abettor include presence at the scene of the crime, failure to
7  take steps to attempt to prevent the commission of the crime,
8  companionship, flight, and conduct before and after the crime."
9  People v. Jones, 108 Cal. App. 3d 9, 15 (4th Dist. 1980) (citing
10 In re David K., 79 Cal. App. 3d 992, 998 (2d Dist. 1978), In re
11 Lynette Co., 54 Cal. App. 3d 1087, 1094-95 (2d Dist. 1976), and
12 Pinell v. Superior Court, 232 Cal. App. 2d 284, 287 (1st Dist.
13 1965)); accord People v. Pitts, 223 Cal. App. 3d 606, 893 (5th
14 Dist. 1990).  In making his probable cause determination, Fleming
15 was also permitted to consider evidence that ultimately may not
16 have been admissible at a trial or sufficient to sustain a
17 conviction.  See United States v. Harris, 403 U.S. 573, 582
18 (1971) (plurality) (recognizing that, because of the "very
19 different functions of criminal trials and preliminary
20 determinations of probable cause," evidence that "would rarely be
21 admissible at trial" could be considered for purposes of probable
22 cause) (citing Brinegar v. United States, 338 U.S. 160, 174-75
23 (1949)); Hoffa v. United States, 385 U.S. 293, 310 (1966) ("[T]he

24

25       [5]   Although Fleming also knew that the officers discovered
26 the motorcycle and Maglite during the search of the Ewing
   residence, that circumstantial evidence is relevant to probable
27 cause against Mark and may strengthen the conclusion that Heather
   was the female companion at Shakers' Bar, but does little, if
28 anything, to establish probable cause that Heather aided and
   abetted in the murder.

15

minimum evidence [sufficient] to establish probable cause . . . may fall far short of the amount necessary to support a criminal conviction."); United States v. Brobst, 558 F.3d 982, 997 (9th Cir. 2009) ("Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false."); Hart v. Parks, 450 F.3d 1059, 1065 (9th Cir. 2006) ("Police may rely on hearsay and other evidence that would not be admissible in a court to determine probable cause.").

As the Ninth Circuit explained, however, the "proper inquiry" is whether Fleming had "'probable cause to believe that [Heather] had committed a crime,' not merely that [] she was present at the scene or accompanied the responsible parties." Ewing, 588 F.3d at 1230 (quoting Torres, 548 F.3d at 1206) (alterations in Ewing).  Specifically, Fleming had to have probable cause that Heather acted with the specific intent "'of committing, or of encouraging or facilitating commission of, the offense.'"  Mendoza, 18 Cal. 4th at 1123 (quoting People v. Beeman, 35 Cal. 3d 547, 560 (1984)); see Rodis, 558 F.3d at 969 ("'[W]hen specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred.'").

At the time Fleming recommended that murder charges be add-booked against Heather, it was clearly established that "presence at the scene of a crime or failure to prevent its commission [is not] sufficient to establish aiding and abetting." People v. Stankewitz, 51 Cal. 3d 72, 90 (1990); People v. Lewis, 26 Cal. 4th 334, 369 (2001) ("Although [defendant] was at the

16

scene of the crime and had intimate knowledge of the robbery and
murder, this fact without more merely means that he was an
eyewitness and not necessarily an accomplice to the crimes.");
United States v. Herrera-Gonzalez, 263 F.3d 1092, 1095 (9th Cir.
2001) ("In a 'mere presence' or 'hanging around' case, the
question is whether there is enough evidence to tie the defendant
to the criminal activities.  It is not a crime to be acquainted
with criminals or to be physically present when they are
committing crimes."); cf. Ewing, 588 F.3d at 1231 ("The fact that
the female biker left the scene with the biker and was later in
possession of items that may have been connected to the offense
does not support a charge of aiding and abetting murder.").  It
was also clearly established that one could not be found to have
been an aider and abetter as a matter of law based only on
evidence that the individual was associated with the principal
actor, was present when the crime was committed, and failed take
action to prevent the crime.  Stankewitz, 51 Cal. 3d at 91-92.

       Although all of these cases addressed whether the
evidence warranted sending the aiding and abetting determination
to the jury or sustaining an aiding and abetting conviction, a
reasonable prosecutor trained in the law would not ignore their
unequivocal rejection of evidence limited to presence and
association to establish aiding and abetting.  See Inouye v.
Kemna, 504 F.3d 705, 715 (9th Cir. 2007) ("[T]he law may be
clearly established even if there is no case directly on point.
It is enough if 'in the light of pre-existing law the
unlawfulness [is] apparent.'" (quoting Wilson, 526 U.S. at 615))
(alteration in Inouye).  At the time he made his recommendation,

17

it was clearly established that Fleming had to have probable

cause to believe that Heather had the specific intent "'of

encouraging or facilitating commission of" Donahue's murder,

Mendoza, 18 Cal. 4th at 1123, and evidence that she was only

present at the scene and associated and departed with the male

biker would not lead a reasonable prosecutor to reach this

conclusion.  Although the Ninth Circuit's grant of qualified

immunity to the officers illustrates that substantial evidence of

her intent was not required, clearly established law mandated at

least some evidence beyond her presence at the scene and

association with the principal actor for a reasonable prosecutor

to conclude that probable cause supported her arrest for murder.[6]

---

[6]     After Fleming made the recommendation at issue in this
case, the Ninth Circuit specifically addressed the significance
of a suspect's presence at the scene of a crime and affiliation
with the principal actor in the context of probable cause in
Torres v. City of Los Angeles, 548 F.3d 1197 (9th Cir. 2009).
Similar to the limited circumstantial evidence suggesting Heather
may have instigated the confrontation with Donahue, there was
also evidence in Torres that "the third male passenger had
flashed gang signs and shouted challenges" at the victim prior to
the shooting by the driver of the car.  Id. at 1202, 1209.  While
the Ninth Circuit described this as a "dearth of evidence as to
the third male passenger's culpability [that] further widens the
gap between mere suspicion and probable cause to believe that
[the passenger] had committed a crime," it did not conclude that
probable cause was lacking as a matter of law.  Id. at 1209-10.
With respect to qualified immunity, the Ninth Circuit ultimately
determined that the issue should be decided by the jury because
"'there was enough evidence for a reasonable jury to conclude
that reasonable officers would not have acted as [the defendant
officers] did in arresting [the passenger].'"  Id. at 1212
(quoting Grant v. City of Long Beach, 315 F.3d 1081, 1090 (9th
Cir. 2002)).
       Although Torres was decided after the events in this
case, the Ninth Circuit's reluctance to hold that the officers'
decision to arrest the passenger did not violate clearly
established law underscores the significance of the evidence,
albeit it limited and insufficient to establish probable cause as
a matter of law, linking the passenger to the crime.  Here, while
the officers--and this court when it previously found probable
cause as a matter of law--were presented with similar limited

1    Accordingly, Fleming is not entitled to qualified

2  immunity for his recommendation because a reasonable prosecutor

3  would not believe that probable cause supported her arrest for

4  Donahue's murder due to the total absence of evidence suggesting

5  she intended to aid and abet in the murder.  The court must

6  therefore deny Fleming's motion for summary judgment on that

7  issue.

8          2. <u>Mark Ewing</u>

9          This court previously concluded that it could not

10 determine, as a matter of law, that probable cause supported the

11 decision to charge Mark with murder.  <u>Ewing</u>, 2008 WL 366156, at

12 *20-21.  Again, as the Ninth Circuit did on appeal, the court

13 will assume, for purposes of qualified immunity, that probable

14 cause did not support Mark's arrest for murder.  Fleming is

15 therefore entitled to qualified immunity for his recommendation

16 to add-book a murder charge against Mark only if his

17 recommendation did not violate clearly established law or a

18 reasonable prosecutor would have made the same recommendation.[7]

19          At the time Fleming recommended that murder charges be

20 ──────────────

21 evidence linking Heather to the crime, Fleming had no knowledge
   of that evidence when he recommended murder charges be add-booked
22 against her.

23    [7]    Although the Ninth Circuit determined that the officers
   were also entitled to qualified immunity for Mark's arrest, that
24 holding does not serve as the law of the case with respect to
   Fleming's entitlement to qualified immunity because the officers'
25 reliance on Fleming's recommendation was necessary to the Ninth
   Circuit's conclusion that they did not violate clearly
26 established law of which reasonable officers would know.  <u>See</u>
   <u>Ewing</u>, 588 F.3d at 1231 ("[T]he evidence against Mark was slim. .
27 . . <u>Most significantly</u>, however, they had Fleming's
   recommendation to add a murder charge. . . . [This] is evidence
28 of good faith, and in the present case, it tips the scale in
   favor of qualified immunity.") (emphasis added).

add-booked against Mark, the evidence against him included a tentative identification made by one out of five witnesses, the indication that the name the female companion called out may have ended with a "K," and the discovery of a Maglite, motorcycle, knives, and clothing items bearing Jus' Brothers insignia at his residence.  <u>Ewing</u>, 588 F.3d at 1231.  The Maglite also appeared to have hair and blood on it, although analysis of the potential trace evidence had not been conducted.

It is clearly established that the tentative identification of Mark estimated at only a fifty to sixty percent accuracy was insufficient to give rise to probable cause that Mark committed the murder.  <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 482 (1963) (probable cause finding may not be based "upon information too vague and from too untested a source"); <u>Grant v. City of Long Beach</u>, 315 F.3d 1081, 1085-88 (9th Cir. 2002).  Not only was there a single weak identification of Mark, it is also significant that four of the five witnesses did not identify Mark when showed the photo lineup.  <u>See</u> <u>Crowe v. County of San Diego</u>, 608 F.3d 406, 433 (9th Cir. 2010) ("Although 'police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" (quoting <u>United States v. Ortiz-Hernandez</u>, 427 F.3d 567, 574 (9th Cir. 2005))).  Shirk's statement that the name the female companion called out "may, might have" ended in a "K" is also relatively generic and tentative.

Taken with this vague and generic evidence, Fleming was also informed that the search of the Ewing residence revealed a

motorcycle, Maglite, and Jus' Brothers clothing.  Although this evidence could support probable cause even though it is consistent with innocent behavior, see Ramirez v. City of Buena Park, 560 F.3d 1012, 1024 (9th Cir. 2009) ("'The test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior.'" (quoting United States v. Thomas, 863 F.2d 622, 627 (9th Cir. 1988))), a motorcycle, Maglite, and Jus' Brothers clothing would likely have been discovered in the search of any Jus' Brothers member's home. This evidence therefore does little, if anything, to distinguish Mark as the Jus' Brothers member responsible for Donahue's murder.

        In addition to this evidence, however, Fleming may have been informed that the Maglite appeared to have traces of hair and blood on it, which is significant evidence suggesting that Mark was the individual who hit Donahue on the head with a Maglite.[8]  As previously identified, conflicting evidence exists about whether Officer Reyes informed Fleming of this potential trace evidence.  If, however, Fleming ultimately proves that he was told the Maglite appeared to have hair and blood on it, this court could not conclude that his recommendation to charge Mark with murder violated clearly established law of which a reasonable prosecutor would know.  On the other hand, if Fleming was unaware of the appearance of hair and blood on the Maglite and only considered the weak and vague identification of Mark and

---

[8]     The Ninth Circuit omitted reference to or discussion of the potential trace evidence in its decision.

21

1  the circumstantial evidence that failed to distinguish Mark from

2  any other Jus' Brothers member, the court is unable to conclude

3  that a reasonable prosecutor trained in the law would have

4  recommended that the officers add-book a murder charge against

5  him.  Accordingly, because a disputed issue of fact prevents the

6  court from granting Fleming qualified immunity for his

7  recommendation to charge Mark with murder, the court must deny

8  Fleming's motion for summary judgment on that issue.

9          IT IS THEREFORE ORDERED that Fleming's motion for

10  summary judgment with respect to qualified immunity be, and the

11  same hereby is, DENIED.

12  DATED:  August 31, 2010

13

14  _____

15  WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

22